UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN HARBOR MARINA PARTNERSHIP, A CALIFORNIA GENERAL PARTNERSHIP, dba SUN HARBOR MARINA,<br><br>Plaintiff,<br><br>v.<br><br>M/Y NEFARIOUS, U.S.C.G. OFFICIAL NO. 595399, a 1976 BAHAMA MOTOR YACHT OF APPROXIMATELY 43-FEET IN LENGTH AND 13-FEET IN BEAM, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES AND APPURTENANCES, in rem,<br><br>Defendant. | Case No.:  3:23-cv-0664-JES-DDL<br><br>**ORDER DIRECTING VESSEL SALE AND AUTHORIZING CREDIT BID**<br><br>[ECF No. 14] |

Pending before the Court is Plaintiff Sun Harbor Marina Partnership's ("Plaintiff") Motion for Interlocutory Vessel Sale and Authorization to Credit Bid ("Motion for Vessel Sale"). The Motion is unopposed. For the reasons stated below, the Court **GRANTS** the Motion.

/ / /

/ / /

# I.   BACKGROUND

## A.   Factual Background

On February 6, 2007, Richard Rock, who Plaintiff is informed owns Defendant M/Y Nefarious ("Defendant Vessel"), executed a Maritime Contract for Private Wharfage (the "Wharfage Contract"), a true and correct copy of which is attached as Exhibit A to the Verified Complaint ("Compl."). Compl. ¶ 5.

Paragraph 9 of the Wharfage Contract provides in relevant part: "Assuming Owner has not breached any term of the Agreement (in which event the Marina may immediately terminate this Agreement) and the Agreement is for a monthly period, it can only be terminated by either party by giving thirty (30) days written notice of termination to the other. In terminating the Agreement pursuant to 30 days advance notice, the party terminating the Agreement is not required to specify any cause for the termination." Compl. ¶ 8.

Paragraph 9 of the Wharfage Contract provides in relevant part that: "If after termination of this Agreement by the Marina the Owner fails to remove his or her Vessel, such Vessel shall be regarded as a trespasser and wharfage fees will, without waiving objections to the Vessel's trespass, be charged based on the then current transient rate." [Emphasis in original]. Compl. ¶ 9.

On November 29, 2021, Plaintiff sent Richard Rock a "NOTICE OF ELECTION TO TERMINATE MONTH TO MONTH TENANCY," advising him of Plaintiff's election to terminate the Wharfage Contract, effective 30 days thereafter, and his obligation to "vacate and deliver possession of the premises . . . ." Compl. ¶ 10.

Since the Defendant Vessel was not removed from Plaintiff's marina, as required by the above termination notice and the Wharfage Contract, on July 25, 2022, Plaintiff's maritime attorney sent Richard Rock a letter memorializing his failure to vacate the Defendant Vessel from the marina by the termination date (December 30, 2021), his account arrearages then in the amount of $2,955.66, and offering to waive recovery of all arrearages "if and only if your vessel is removed from the marina no later than August 1,

2022." Compl. ¶ 11. This letter also cautioned that: "If for any reason your vessel remains at the marina after this date, my client will have no option but to exercise all available and appropriate remedies at law, in equity and/or in admiralty, as necessary to vindicate my client's valuable property rights." *Id.*

Since Mr. Rock continued to fail and refuse to remove the Defendant Vessel from Plaintiff's marina, an attorney acting on Plaintiff's behalf filed an unlawful detainer action in San Diego Superior Court, in the case styled: *Sun Harbor Marina Partnership, dba Sun Harbor Marina v. Richard Rock*, Case No.: 37-2022-00044862-UD-CTL (the "Unlawful Detainer Action"). Compl. ¶ 12. Plaintiff prevailed in the Unlawful Detainer action, but Richard Rock continued to fail and refuse, and he continues to fail and refuse, to remove the Defendant Vessel from Plaintiff's marina. Compl. ¶ 13.

In a final attempt to avoid filing the instant vessel arrest action, on March 16, 2023, Plaintiff's maritime attorney sent Richard Rock a letter demanding that he "vacate [the Defendant Vessel] from the marina within 10 calendar days from the date of this letter," and that he pay wharfage fee arrearages, then in the amount of not less than $3,242.22. Compl. ¶ 14. This letter also cautioned Mr. Rock that if the Defendant Vessel was not removed from the marina within 10 calendar days Plaintiff would "take legal action without further advance notice." *Id.*

Plaintiff also avers in its Verified Complaint that it has fully satisfied all obligations required of it as a maritime services provider. Compl. ¶ 15.

### B.   Procedural Background

On April 12, 2023, Plaintiff filed its Verified Complaint against the Defendant Vessel and all of her engines, tackle, accessories, equipment, furnishings and appurtenances, *in rem* for vessel arrest, interlocutory sale, and money damages for breach of maritime contract, trespass, and *quantum meruit*. *See generally* Compl. This Court issued an order on April 13, 2023, authorizing the arrest of the Defendant Vessel and appointing Plaintiff as Substitute Custodian. ECF No. 7. The default of Defendant Vessel

was entered on May 26, 2023. ECF Nos. 5, 6. Plaintiff filed the instant Motion for Interlocutory Vessel Sale and Authorization to Credit Bid on August 29, 2023.

## II.   DISCUSSION

### A.   Interlocutory Sale

"The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the in rem process." *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983). The Federal Rules of Civil Procedure Supplemental Rules for Admiralty or Maritime Claims provide that upon application of a party having custody of the subject property, the Court may order the property sold if the property is "liable to deterioration" while in custody pending the action, "there is an unreasonable delay in securing the release of the property," or if "the expense of keeping the property is excessive or disproportionate." Fed. R. Civ. P. Supp. R. E(9)(a).1. The applicant is required to satisfy one of the three listed criteria to justify an interlocutory sale. *Cal. Yacht Marina-Chula Vista, LLC v. S/V OPILY*, No. 14-CV-01215-BAS (BGS), 2015 WL 1197540, at *2 (S.D. Cal. Mar. 16, 2015) (citing *Merchants Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1341 (5th Cir. Unit A 1981)). Plaintiff moves for interlocutory sale on all three grounds. *See* Motion for Vessel Sale at 6, 7.

Plaintiff first argues that as the Defendant Vessel's machinery, equipment and general condition deteriorate while in custody, her value is commensurately decreasing. Motion for Vessel Sale at 7. To support this contention, Plaintiff submits a Declaration from Ray Jones ("Jones Decl."), a licensed yacht broker of 42 years who has sold thousands of vessels and offered expert opinion in dozens of cases involving arrested vessels. Jones Decl. ¶¶ 1-2. Jones stated that "vessels *inevitably* deteriorate in condition and value over time," especially when, as in this case, the vessel sits idle for extended periods in salt water. *Id.* at ¶ 3. Based upon Jones' testimony, the Court finds that the Defendant Vessel is liable to deterioration within the meaning of Rule E(9)(a) while in

custody pending this action. *See Bartell Hotels v. S/L Talus*, 445 F. Supp. 3d 983, 987-88 (S.D. Cal. 2020) (relying on Jones's testimony to conclude that a vessel sitting idle in salt water is liable to deterioration); *California Yacht Marina-Chula Vista, LLC*, 2015 WL 1197540, at *3 (same); *Shelter Cove Marina, Ltd. v. M/Y Isabella*, Case No. 17-cv-1578-GPC-BLM, 2017 WL 5906673, at *2 (S.D. Cal. Nov. 30, 2017).

Next, Plaintiff argues that since the Defendant Vessel's arrest there has been no effort to secure its release which has resulted in an unreasonable delay. Motion for Vessel Sale at 9. "Courts generally allow at least four months for the provision of a bond to secure the release of a vessel before granting an interlocutory sale on grounds of unreasonable delay." *GB Cap. Holdings, LLC v. S/V Glori B*, No. 18cv312-WQH-AGS, 2019 WL 277387, at *4 (S.D. Cal. Jan. 22, 2019) (*citing Vineyard Bank v. M/Y Elizabeth I, U.S.C.G. Off. No. 1130283*, No. 08CV2044 BTM WMC, 2009 WL 799304, at *2 (S.D. Cal. Mar. 23, 2009)), *aff'd sub nom*. *GB Cap. Holdings, LLC v. Heston*, 802 F. App'x 304 (9th Cir. 2020).

The Defendant Vessel was arrested 211 days ago, on March 7, 2023 – over 5.5 months ago. *See* ECF No. 9, 10.  The record does not show any attempt to secure the Defendant Vessel's release since. Thus, the Court finds that there has been an unreasonable delay within the meaning of Rule E(9)(a). See *Bartell Hotels*, 445 F. Supp. 3d at 988 (finding a delay of almost six months unreasonable); *Ferrous Fin. Servs. Co.*, 567 F. Supp. at 401 (finding no attempt to secure vessel's release within four months of arrest was unreasonable delay).

Finally, Plaintiff argues that the cost of keeping the Defendant Vessel in custody is excessive and disproportionate. Motion for Vessel Sale at 10. Plaintiff presents evidence that while the Defendant Vessel is in custody Substitute Custodian fees will continue to accrue in an amount not less than $129.00 per day, and that Substitute Custodian fees now total at least $28,619.00. *Id.* at 11. Plaintiff also presents evidence that the fair market value of the Defendant Vessel is, at most, $15,000.00. *Id.* at 11. Thus, monthly Substitute Custodian fees now exceed the fair market value of the Defendant Vessel.

"Maintenance expenses of several thousand dollars per month, particularly where [no attempt has been made] to answer Plaintiff's Complaint or secure the Vessel's release, are excessive and disproportionate." *Vineyard Bank*, 2009 WL 799304, at *2. Accordingly, the Court finds that the cost of keeping the Defendant Vessel in custody is excessive and disproportionate under Rule E(9)(a). *See GB Cap. Holdings, LLC*, 2019 WL 277387, at *4 (holding accrued costs of $2,430.00 per month excessive and disproportionate to vessel's $6,000.00 fair market value).

In the light of the Defendant Vessel's likelihood of deterioration, the unreasonable delay in securing its release, and the excessive and disproportionate cost of keeping it in custody, the Court finds interlocutory sale warranted under Rule E(9)(a) and grants Plaintiff's motion in this regard.

**B.      Authorization to Credit Bid**

Plaintiff asks the Court to authorize a credit bid at the Defendant Vessel's auction up to the lien amount in the Verified Complaint ($3,242.22) to be established by affidavit, plus its actual and demonstrable costs of suit, including U.S. Marshal, substitute custodian, and other *custodia legis* expenses to be calculated through the date of sale. Motion for Vessel Sale at 14. Plaintiff asserts that as the only maritime lien claimant, it is by definition senior to all other claims in this action. *Id.*

Under the Civil Local Rules, when the court determines on the merits that a plaintiff or plaintiff in intervention has a valid claim senior in priority to all other parties, that plaintiff in intervention foreclosing a properly recorded and endorsed preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served on all other parties no later than seven (7) days prior to the date of sale. Civ. L.R. E.1(e)(2). There is nothing in the record to indicate that a party aside from Plaintiff has asserted any maritime lien claim against the Defendant Vessel. It follows that Plaintiff has a valid claim senior in priority to all

other parties and thus the Court finds it appropriate to grant Plaintiff's request to credit bid at the Defendant Vessel's auction.

### III.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's motion for interlocutory sale and credit authorization as follows:

**IT IS HEREBY ORDERED** that, consistent with Rule E(9)(b) and Civil Local Rule E.1(e) the United States Marshal be and hereby is directed and empowered to sell said Defendant Vessel and her engines, tackle, accessories, equipment, furnishings and appurtenances, as is, where is, at public sale at the first available time and date, after having first caused notice of said sale to be published daily in a newspaper of general circulation within the City of San Diego, California for at least seven days immediately before the date of sale; and

**IT IS FURTHER ORDERED** that such public notice specify the date, time and location for the sale of the Defendant Vessel; and

**IT IS FURTHER ORDERED** that, consistent with Civil Local Rule E.1(e)(2), such public notice specify that the last and highest bidder at the sale will be required to deposit with the U.S. Marshal a certified check or a cashier's check in the amount of the full purchase price not to exceed $500, and otherwise $500 or ten percent (10%) of the bid, whichever is greater, and that the balance, if any, of the purchase price shall be paid by certified check or cashier's check before confirmation of the sale or within three days of dismissal of any opposition which may have been filed, exclusive of Saturdays, Sundays and legal holidays; and

**IT IS FURTHER ORDERED** that any proceeds of said sale shall be held by the United States Marshal or deposited by the United States Marshal in the Registry of this Court, pending further order of this Court; and

**IT IS FURTHER ORDERED** that Plaintiff, having a secured maritime lien interest in the Defendant Vessel pursuant to the Commercial Instruments and Federal Maritime Lien Act (46 U.S.C. §§ 31301-31343) and being the only claimant in this action

asserting a maritime claim against her, is authorized pursuant to Civil Local Rule E.1(e)(2) to credit bid at the auction of the Defendant Vessel, without payment of cash, a sum equal to its secured interest in the Defendant Vessel, consisting of the lien amount specified in Plaintiff's Verified Complaint ($3,242.22), plus its actual costs of suit through the date of the sale, including U.S. Marshal and other *custodia legis* expenses, with such costs and expenses to be calculated at the rates specified and authorized in the Order Appointing Substitute Custodian and Authorizing Movement of Defendant Vessel. However, as Plaintiff's maritime necessaries lien interest in the Defendant Vessel does not, as a matter of law, include attorneys' fees, such fees are not to be included in any credit bid Plaintiff makes; and

**IT IS FURTHER ORDERED** that should Plaintiff elect to credit bid, it shall file and serve any appearing parties with its Notice of Intent to Credit Bid no later than seven (7) days prior to the date of the sale of the Defendant Vessel, as required by Civil Local Rule E.1(e)(2); and

**IT IS FURTHER ORDERED**, pursuant to Civil Local Rule E.1(e)(2), that if within three days of the auction date, exclusive of Saturdays, Sundays, and legal holidays, no written objection is filed, the sale shall stand confirmed as of course, without the necessity of any affirmative action thereon by a judge, except that no sale shall stand confirmed until the buyer has complied fully with the terms of the purchase.

**IT IS SO ORDERED**.

Dated: October 4, 2023

Honorable James E. Simmons, Jr.
Unites States District Judge